IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT GRUCHACZ,<br>    *Plaintiff*, | :<br>:<br>: |
| v. | : CIVIL ACTION<br>: NO. 22-4734 |
| COVENTRY RESOURCES LLC and REID BUERGER,<br>    *Defendants*. | :<br>:<br>:<br>: |

## MEMORANDUM OPINION

**Scott, J.**                                    **September 30, 2024**

  In this action brought by a former longtime employee of the defendants, the plaintiff, Robert Gruchacz, asserts claims for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), for interference with his leave rights under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), and for breach of contract and violation of the Pennsylvania Wage Payment Collection Law, 43 P.S. § 260.1, *et seq.* ("WPCL") for failure to pay his bonuses under a performance bonus plan and deferred bonus program after the defendants terminated him.

  The defendants have filed a motion to compel arbitration of four of the six counts in the first amended complaint pursuant to an arbitration clause in the Performance Bonus Plan. While the parties agree that the claims pertaining to the deferred bonus program should not be arbitrated, and that the claims pertaining to the Performance Bonus Plan should be arbitrated, they do not agree about whether the claims brought under the ADEA and FMLA are subject to arbitration. They also disagree about who should decide whether these claims are arbitrable: the court or an arbitrator.

For the reasons explained below, the Court will grant the defendants' motion to compel arbitration, with the arbitrability of the ADEA and FMLA claims to be determined by an arbitrator.

## BACKGROUND

*Allegations in the First Amended Complaint*

According to the first amended complaint, the plaintiff, Robert Gruchacz, was employed by the defendant Coventry Resources LLC ("Coventry") for 16 years until he was terminated in 2021. *See* First Amended Complaint ("FAC") (ECF No. 11) ¶ 1. Coventry is a closely held business engaged in the life settlement business, headquartered in Fort Washington, Pennsylvania, which buys life insurance policies from policyholders at a discount and then collects the full value of the policy when the insured dies. FAC ¶¶ 5, 7, 17-18. Mr. Gruchacz, a certified public accountant, was hired as Coventry's Vice President of Finance in 2005, and in 2013 was promoted to Chief Financial Officer, which position he held until he was terminated seven years later at age 61. FAC ¶¶ 2, 20-21, 31.

On November 5, 2021, the defendant Reid Buerger, the Chief Executive Officer of Coventry who had supervisory authority over Mr. Gruchacz, advised him that he would be terminating his employment at an unspecified date in the future in order to move in a different direction. FAC ¶¶ 8-9, 38-39. During that conversation, Mr. Buerger said that to facilitate the transition, Coventry wanted to enter into a severance agreement and consulting agreement with him. *Id.* ¶ 39.

Also on November 5, 2021, one of Mr. Gruchacz's children became seriously ill, and he learned that he and his wife would have to travel out of state to care for her. He notified both Coventry's Chief Operating Officer ("COO") and Mr. Buerger that he would need to take FMLA

2

leave for his child. Although he received an acknowledgment of his FMLA request from the COO, he didn't hear anything further about it. Consequently, on November 17, 2021, while still on FMLA leave, Mr. Gruchacz sent an email to Amy Welsh, Coventry's General Counsel, regarding his need for FMLA leave. *Id.* ¶¶ 40-44. The next day, Ms. Welsh advised him that his employment had been terminated, and enclosed a proposed severance agreement with a retroactive termination date of November 5, 2021. She also asked him if he was interested in entering into a consulting agreement. The parties were unable to reach a severance agreement, and Coventry never offered him a consulting agreement. In December 2021, Coventry told Mr. Gruchacz that he was terminated for cause. FAC ¶¶ 46, 48-50.

While employed at Coventry, Mr. Gruchacz participated in various bonus and deferred compensation plans. The most relevant plan for purposes of deciding the defendants' motion is the Performance Bonus Plan. This plan provided that Coventry was required to pay the plaintiff "the full amount of any unpaid Performance Bonus . . . within 30 days of his termination," as long as he was not terminated for cause. Ex. 1 to FAC (ECF No. 11-1), Ex. A. Additionally, the Performance Bonus Plan contains an arbitration provision, which states, in relevant part, that "all disputes regarding the Performance Bonus Plan shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules . . . ." *Id.*

Mr. Gruchacz also participated in an Appreciation Bonus Plan, which entitled him to a bonus upon the occurrence of an "Appreciation Event," such as reaching age 65 or having a disability while employed at Coventry. The Appreciation Bonus Plan contains the same arbitration provision as the one in the Performance Bonus Plan. However, he contends that he is not seeking any relief under this bonus plan.

Over the years that he was employed at Coventry, Mr. Gruchacz was also offered and received an annual "deferred bonus." The terms of the deferred bonus in 2021 did not require that he be employed by Coventry at the time the bonus became payable. The deferred bonus programs did not contain an arbitration provision.

*Procedural History*

After he was terminated, Mr. Gruchacz filed a timely Charge of Discrimination with the EEOC, alleging that Coventry terminated him because of his age. After receiving his Notice of Right to Sue from the EEOC, he filed a four-count complaint on November 28, 2022. In the complaint, he asserted claims for age discrimination under the ADEA; interference with his leave rights under the FMLA; breach of contract for failure to pay his bonuses under the Performance Bonus Plan and deferred bonus programs; and violation of the Pennsylvania WPCL for failure to pay his bonuses under the Performance Bonus Plan and deferred bonus program. The defendants filed a motion to compel arbitration of all counts of the complaint pursuant to the arbitration provisions in the Performance Bonus Plan and Appreciation Bonus Plan. In response, the plaintiff filed an amended complaint, which divided his breach of contract and WPCL claims into four separate counts in order to separate out his claims under the Performance Bonus Plan and the deferred bonus programs. The six counts in the amended complaint are:

Count I: Claim of age discrimination under the ADEA

Count II: Claim of interference with leave rights under the FMLA

Count III: Breach of contract claim for failure to pay bonus under the deferred bonus program

Count IV: Violation of the Pennsylvania WPCL for failure to pay bonus under the deferred bonus program.

Count V: Breach of contract claim for failure to pay bonus under the Performance Bonus Plan

Count VI: Violation of the Pennsylvania WPCL for failure to pay bonus under the Performance Bonus Plan

In response to the first amended complaint, the defendants filed a renewed motion to compel arbitration, this time seeking to compel arbitration of Counts I, II, V and VI, and to stay proceedings concerning Counts III and IV pending the outcome of the arbitration. As the plaintiff states in his response to motion to compel arbitration, the parties agree to the following:

- The deferred bonus program claims in Counts III and IV are not arbitrable;

- The Performance Bonus Plan claims in Counts V and VI are arbitrable; and

- Regardless of which claims are ultimately sent to arbitration, the claims that remain before the court should be stayed pending the resolution of the arbitrated claims.

*See* Pl.'s Opp'n to Defs.' Renewed Mot. to Compel (ECF No. 15) (Pl.'s Br.) at 6. *See also* Defs.' Reply Brief (ECF No. 16) at 6.

Because the parties agree that Counts V and VI pertaining to the Performance Bonus Plan are subject to arbitration, the only claims that need a determination made as to whether they are arbitrable are the claims brought under the ADEA and FMLA (Counts I and II). The threshold issue for the court is to determine who must decide [the question of arbitrability] [whether these claims are arbitrable]: the court or the arbitrator? The defendants contend that the arbitrator must make this decision, while the plaintiff contends that this is a decision for the court to make. If the court determines that it, and not the arbitrator, must decide whether the two claims are subject to arbitration, the defendants argue that the two claims should be sent to arbitration, while the plaintiff contends that the claims are not arbitrable and should remain in court to be decided by a jury.

## DISCUSSION

The Federal Arbitration Act ("FAA") "reflects the fundamental principle that arbitration is a matter of contract" and "requires courts to enforce [arbitration agreements] according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). "The FAA establishes a strong federal policy in favor of compelling arbitration over litigation." *MZM Constr. Co. v. N.J. Building Laborers Statewide Benefit Funds*, 974 F.3d 386, 396 (3d Cir. 2020). A party "aggrieved" by the "failure" or "refusal of another to arbitrate under a written agreement for arbitration may petition" the court "for an order directing that such arbitration proceed in the manner provided for in [the] agreement." 9 U.S.C. § 4. Once the court is "satisfied that an arbitration agreement exists," it shall direct the parties to proceed to arbitration. *Henry Schein*, 139 S. Ct. at 530; *MZM Constr. Co.*, 974 F.3d at 401.

*Gateway Issue: Who Decides If the ADEA and FMLA Claims Are Arbitrable?*

The first issue before the court is to determine whether the court or an arbitrator must decide the issue of arbitrability. Arbitrability considers whether the dispute falls within the scope of the arbitration clause. *Jaludi v. Citigroup*, 933 F.3d 246, 254 (2019). "Questions of arbitrability . . . are presumed to be questions for judicial determination." *Quilloin v. Tenet HealthSys. Phila.*, 673 F.3d 221, 228 (3d Cir. 2012). However, the ultimate "question of who decides arbitrability is itself a question of contract." *Henry Schein*, 139 S. Ct. at 530. Thus, under the FAA, parties may "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Id.* at 530. "[P]arties may delegate threshold arbitrability questions to the arbitrator [as long as] the parties' agreement does so by 'clear and unmistakable'

evidence." *Id.* (citations omitted); *accord Rent-A-Center*, 561 U.S. at 68–69 & n.1; *MZM Constr. Co.*, 974 F.3d at 386.

The arbitration provision at issue states, in relevant part, that "all disputes regarding the Performance Bonus Plan shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules . . . ."

The defendants argue that an arbitration agreement that incorporates the commercial arbitration rules of the American Arbitration Association, which contain a rule permitting the arbitrator to assess the arbitrability of a dispute, constitutes a "clear and unmistakable" delegation to the arbitrator to decide all questions of arbitrability. *See* Defs.' Brief in Support of Renewed Mot. to Compel Arbitration (ECF No. 14-1) (Defs.' Br.) at 10; Defs.' Reply Brief in Support of Motion (ECF No. 16) at 2-5; Notice of Supplemental Authority (ECF No. 26).

In *Richardson v. Coverall North America, Inc.*, 811 F. App'x 100, 103, 104 (3d Cir. Apr. 28, 2020), the arbitration agreement at issue provided that "all controversies, disputes or claims between [the parties] . . . shall be submitted promptly for arbitration" and that "arbitration shall be subject to . . . the then current Rules of the American Arbitration Association for Commercial Arbitration." *Id.* at 103. The court stated that "[c]learly and unmistakably then, the AAA Rules govern the arbitration of any dispute between [the parties]." *Id.* The court went on to quote the text of Rule 7(a) of the AAA Rules, which states that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Id.* (quoting AAA, Commercial Arbitration Rules and Mediation Procedures, Rule 7(a)). The court concluded that the arbitration provision was "about as clear and unmistakable as language can get," such that "the clarity of the [parties'] agreement show[ed] the intent to delegate the

7

arbitrability." *Id.* at 103, 104 (quoting *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009)) (internal quotations omitted).

Recently, in a case involving an arbitration provision that incorporated by reference the AAA Commercial Arbitration rules and was virtually identical to the one in this case, the Third Circuit concluded in another non-precedential opinion that the parties' "incorporation of the rules of the . . . AAA in the arbitration agreement constitutes 'clear and unmistakable' evidence of their agreement to delegate arbitrability questions to the arbitrator." *Blueprint Cap. Advisors, LLC v. Div. of Inv.*, No. 23-1116, 2023 WL 8866554, at *2 (3d Cir. Dec. 22, 2023). The court explained that the parties' contract "clearly and unmistakably specifies that the AAA's Commercial Arbitration Rules apply, making [AAA] Rule 7(a) readily accessible." *Id.* at *3. On that basis, it held that "the arbitration clause clearly and unmistakably delegates the threshold arbitrability question, and an arbitrator must determine whether [plaintiff's] claims against [defendant] are arbitrable." 2023 WL 8866544, at *2-3.

The plaintiff contends that "[m]erely specifying who the alternative dispute resolution service provider shall be and which set of rules said provider will utilize in resolving a dispute between an employee and an employer cannot 'clearly and unmistakably' delegate to such ADR provider or its neutral the task of deciding arbitrability . . . ., [as d]oing so would require reference to documents extrinsic to, and which have not been incorporated by reference into, the contracting parties' agreement." Pl.'s Br. at 9. The plaintiff also questions the applicability of *Richardson*'s holding that the incorporation of the ADR service provider's rules evidences a "clear and unmistakable" intent to arbitrate to this case, where an employment agreement is at issue and the two parties are not both commercial entities. Pl.'s Br. at 10-11.

First, the plaintiff's concerns about whether incorporating by reference the AAA rules would require reference to documents extrinsic to the parties' arbitration agreement are without merit. The Third Circuit has opined that "Pennsylvania courts have recognized the incorporation-by-reference theory," including "in an arbitration context," to "accomplish its intended purpose where . . . the provision to which reference is made has a reasonably clear and ascertainable meaning." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 534-35 (3d Cir. 2009). The AAA Commercial Arbitration Rules have a "reasonably clear and ascertainable meaning," which the court in *Richardson* recognized when it said that those rules, including Rule 7(a), are "about as clear and unmistakable as language can get." 811 F. App'x at 103.

Second, the plaintiff's attempts to draw a distinction between arbitration provisions in employment-related agreements as compared to agreements between two commercial entities, or between sophisticated and unsophisticated parties, is of no moment. The court in *Richardson* expressly rejected the argument that relying on the incorporation-by-reference rule is unreasonable in agreements involving "unsophisticated parties." *Id.* at 104. It found that this argument "likely stretches too far and would disregard the 'clear and unmistakable' standard and ignore even the plainest of delegations." *Id.* (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015) ("Our holding today should not be interpreted to require that the contracting parties be sophisticated . . . before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent [to delegate arbitrability]."); *McGee v. Armstrong*, 941 F.3d 859, 863, 865-66 (6th Cir. 2019); *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 548-49, 551-52 (5th Cir. 2018); *Green v. SuperShuttle In'l, Inc.*, 653 F.3d 766, 767-69 (8th Cir. 2011)).

First, the plaintiff's concerns about whether incorporating by reference the AAA rules would require reference to documents extrinsic to the parties' arbitration agreement are without merit. The Third Circuit has opined that "Pennsylvania courts have recognized the incorporation-by-reference theory," including "in an arbitration context," to "accomplish its intended purpose where . . . the provision to which reference is made has a reasonably clear and ascertainable meaning." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 534-35 (3d Cir. 2009). The AAA Commercial Arbitration Rules have a "reasonably clear and ascertainable meaning," which the court in *Richardson* recognized when it said that those rules, including Rule 7(a), are "about as clear and unmistakable as language can get." 811 F. App'x at 103.

Second, the plaintiff's attempts to draw a distinction between arbitration provisions in employment-related agreements as compared to agreements between two commercial entities, or between sophisticated and unsophisticated parties, is of no moment. The court in *Richardson* expressly rejected the argument that relying on the incorporation-by-reference rule is unreasonable in agreements involving "unsophisticated parties." *Id.* at 104. It found that this argument "likely stretches too far and would disregard the 'clear and unmistakable' standard and ignore even the plainest of delegations." *Id.* (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015) ("Our holding today should not be interpreted to require that the contracting parties be sophisticated . . . before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent [to delegate arbitrability]."); *McGee v. Armstrong*, 941 F.3d 859, 863, 865-66 (6th Cir. 2019); *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 548-49, 551-52 (5th Cir. 2018); *Green v. SuperShuttle In'l, Inc.*, 653 F.3d 766, 767-69 (8th Cir. 2011)).

Based on the Third Circuit's analysis in both *Richardson*, and more recently, *Blueprint Cap. Advisors*, the Court concludes that the parties have clearly and unmistakably agreed to delegate the issue of arbitrability to an arbitrator. The arbitration agreement at issue in this case is strikingly similar to the agreements examined in *Richardson* and *Blueprint Cap. Advisors*, where the court found that the parties' "incorporation of the AAA rules in the arbitration agreement constitute[ed] 'clear and unmistakable' evidence of their agreement to delegate arbitrability questions to the arbitrator," and that the arbitration provision was "about as clear and unmistakable as language can get." Therefore, the issue of the arbitrability of Counts I, II, V and VI of the amended complaint is for an arbitrator to determine.

Because the arbitrator will decide whether the four Counts are subject to arbitration, the Court will not reach the issue of whether the claims brought under the ADEA and the FMLA in Counts I and II of the amended complaint are subject to arbitration.

## CONCLUSION

Because the parties have clearly and unmistakably agreed to delegate the issue of arbitrability to an arbitrator, the Court will grant the defendants' motion to compel arbitration. An arbitrator will decide whether the claims asserted in Counts I, II, V and VI of the first amended complaint are subject to arbitration.

The case will be stayed as to Counts III and IV of the first amended complaint pending the outcome of the arbitration.